UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN COBB,<br><br>                              Plaintiff,<br><br>v.<br><br>RAMIRO RODRIGUEZ, ALEX CALDERSON, CHIEF WILLIAM LANSDOWNE, CITY OF SAN DIEGO, and DOES 1 THROUGH 10,<br><br>                              Defendants. | Case No.:  3:13-cv-01353-BEN-JMA<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, TO AMEND JUDGMENT, AND FOR A NEW TRIAL [ECF No. 186];**<br><br>**and**<br><br>**(2) GRANTING PLAINTIFF'S EX PARTE APPLICATION TO FILE AND SERVE A TRANSCRIPT ON AUGUST 29, 2016 [ECF No. 187]** |

On June 27, 2012, two San Diego Police Department officers, Defendants Ramiro Rodriguez and Alex Calderson, detained, searched, and arrested Plaintiff John Cobb for being under the influence of a controlled substance.  Plaintiff subsequently filed suit alleging violations of his Fourth Amendment rights and certain state laws.  The case was tried to a jury from August 2, 2016 to August 4, 2016.  During the trial, Plaintiff moved

for judgment as a matter of law, which this Court denied.  (ECF Nos. 171, 172.)  The jury returned a verdict on August 4 in favor of Defendants on all claims.  (Verdict Form, ECF No. 179.)  This Court subsequently entered final judgment and ordered that all post-trial motions be filed no later than August 24, 2016.  (Final J., ECF No. 180; Post-trial mot. sched., ECF No. 172.)

Now before the Court is Plaintiff's "Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial."  (Mot., ECF No. 186.)  Plaintiff also filed an "Ex Parte Application to File and Serve a Transcript on Monday, August 29, 2016, in support of His Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial," in which he requested to file a partial trial transcript and supplemental memorandum of points and authorities after the deadline to file post-trial motions.  (Ex Parte Appl., ECF No. 187.)  Subsequently, on August 29, 2016, he filed a "Supplemental Memorandum of Points and Authorities in support of his Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial." (Suppl. Mem., ECF No. 190.)  Defendants filed an opposition to Plaintiff's motion (Opp'n, ECF No. 191), and Plaintiff filed a reply (Reply, ECF No. 195).

As an initial matter, the Court **GRANTS** Plaintiff's "Ex Parte Application to File and Serve a Transcript on Monday, August 29, 2016, in support of His Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial."  (ECF No. 187.)  Although Plaintiff filed the trial transcript and supplemental memorandum after the deadline to file post-trial motions, he is pro se and made good faith efforts to secure a trial transcript in a timely manner.  For the reasons discussed below, the Court **DENIES** Plaintiff's "Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial."  (ECF No. 186.)

## BACKGROUND

### I.  Factual Background

Late in the evening on June 27, 2012, Officers Rodriguez and Calderson were working in Redwood Circle in Balboa Park as part of an undercover operation to

investigate citizen complaints of lewd acts and narcotic activities in the area. The officers were in full uniform, assisting undercover units. Defendants testified that they became aware of the presence of a person in a wooded area after hearing rustling in the bushes. Officer Calderson also heard moaning of a sexual nature. Defendants directed their flashlights in the direction of the sound and illuminated the chest and hands of the person emerging. According to Defendants, Plaintiff then walked out of the wooded area. Defendants testified that Plaintiff appeared disheveled, and Officer Calderson saw that Plaintiff was zipping up his pants. Plaintiff testified that he was out for an evening walk to take a break from working on legal research related to litigation he had ongoing at the time. He contends that he was walking on the sidewalk, not emerging from the woods, when he was blinded by flashlights.

The officers decided to stop Plaintiff to investigate his activities. According to Defendants, they identified themselves and asked to speak to Plaintiff. Defendants testified that Plaintiff refused, started yelling at them, and tried to walk away. The officers then cut off Plaintiff's path and stepped in front of him. Officer Calderson testified that Plaintiff became very agitated and angry, leaned into his face, and yelled, "You have no fucking right to talk to me!" Officer Calderson testified that Plaintiff was sweating profusely on a cool night, appeared unkempt, and had dilated pupils. Based on Plaintiff's appearance and the aggressive, in-his-face posture that Plaintiff took towards Officer Calderson, Officer Rodriguez handcuffed Plaintiff for the officers' safety and performed a patdown search for weapons. Officer Rodriguez testified that he did not remove anything from Plaintiff's pockets at that time.

In contrast, Plaintiff testified that he was blinded by Defendants' flashlights when they sought to talk to him, and the officers then pulled him over to a park bench and handcuffed him. He testified that his wallet and car keys were taken out of his pockets. Defendants testified that Plaintiff was unable to sit still on the park bench, and his fingers and legs were twitching. According to Defendants, Plaintiff was agitated and demonstrated fluctuating behavior—sometimes acting calmly, while other times ranting

that Defendants had assaulted him and he would sue them.  Plaintiff admitted that he told the officers multiple times that they had no right to do what they were doing, that he had not done anything illegal, and that he intended to sue them in a civil rights lawsuit.

Officer Calderson performed a field evaluation of Plaintiff to test whether he was under the influence of a controlled substance.  Officer Calderson observed that Plaintiff had droopy, watery eyes; abusive, rapid, mumbling, and slurred speech; dry mouth; nasal irritation; bad body odor; cold and clammy skin; was sweating on a cool night; exhibited muscle rigidity; had an unkempt appearance; had an elevated heart rate; and demonstrated rebound dilation, which according to Defendants' drug recognition expert, Stephen Shebloski, is indicative of the use of a stimulant.  Plaintiff denied that he exhibited these symptoms.

Based on their evaluation of Plaintiff, the officers decided to arrest him for being under the influence of a controlled substance, a violation of California Health and Safety Code section 11550.  Plaintiff was taken to the officers' patrol car and searched before he was seated in the car to ensure he was not carrying any contraband.  Defendants emptied Plaintiff's pockets and placed his wallet and keys in a property bag.  No contraband was found.  Defendants then drove to the police station.

Upon arriving at the station, Officer Calderson read Plaintiff his *Miranda* rights and evaluated him again for the signs of being under the influence of a controlled substance.  He continued to believe that Plaintiff was under the influence.  Plaintiff's blood was drawn to be tested for the presence of certain controlled substances.  Officer Calderson testified that Plaintiff did not refuse the blood draw and, in fact, made no verbal or physical response at all when informed that his blood would be drawn.  Plaintiff contends that he did not consent to the blood draw.  After the blood draw, Plaintiff was booked into jail for the evening and released the next morning.  Plaintiff's blood test did not detect the presence of the substances it was tested for, and the City Attorney declined to prosecute the case.

It is undisputed that Defendants did not obtain a warrant for any of the searches of

1   Plaintiff or his arrest.

2   **II.     Procedural History**

3          Before trial, on July 11, 2016, Plaintiff filed a Motion for Judgment as a Matter of

4   Law.  (ECF No. 118.)  He argued that it was unreasonable for the officers to stop him

5   when he came out of the woods.  He also argued that the patdown search and blood draw

6   were unreasonable searches.  The jury trial started on August 2, 2016, and concluded on

7   August 4, 2016.  On the second day of trial, Plaintiff orally moved for judgment as a

8   matter of law pursuant to his previous filing.  (ECF No. 171.)  This Court denied the

9   motion.  (*Id.*)  Plaintiff renewed his motion for judgment as a matter of law on the third

10  day of trial, which this Court again denied.  (ECF No. 172.)

11         On August 4, 2016, the jury returned a verdict in favor of Defendants on all counts.

12  The jury found that the officers had reasonable suspicion to detain Plaintiff, had probable

13  cause to arrest Plaintiff, and that the searches before and after his arrest were reasonable

14  under the Fourth Amendment.  (Verdict Form, Questions 1, 3, 5, and 7.)  The jury also

15  found that a reasonable officer in the specific situation of either Officer Rodriguez or

16  Officer Calderson would have reasonably believed at the time that his actions were

17  lawful.  (*Id.*, Question 9.)

18         Plaintiff subsequently filed his "Renewed Motion for Judgment as a Matter of

19  Law, to Amend Judgment, and for a New Trial."  Plaintiff moves for judgment as a

20  matter of law on several grounds.  First, he asks the Court to enter judgment as a matter

21  of law that "Defendants unreasonably detained, arrested and searched Plaintiff."  (Mot. at

22  10.)  He contends that performing the patdown search, handcuffing Plaintiff, and making

23  him sit on park bench, "effectively made the investigative detention a de facto arrest, and

24  constituted an arrest on suspicion only, which was unreasonable."  (*Id.*)  Next, Plaintiff

25  asks the Court to rule that the patdown search was unreasonable because the officers had

26  no reason to believe that Plaintiff was armed and dangerous.  (*Id.* at 10-13.)  Third,

27  Plaintiff asks the Court to enter judgment as a matter of law that the warrantless blood

28  draw at the police station was unreasonable.  Plaintiff argues that he did not consent to

the blood draw, implied consent does not apply, and there were no exigent circumstances requiring the police to draw Plaintiff's blood without a warrant. (*Id.* at 13-18.) Plaintiff also contends that Defendants are not entitled to qualified immunity and that there is evidence to support punitive damages. (*Id.* at 20.)

Plaintiff also asks the Court to "amend [the] judgment and rule that[] Plaintiff was unreasonably and unlawfully[] detained, searched, arrested, had this blood draw[n], and was jailed." (*Id.*) Plaintiff contends that "[t]here should then be a new trial with regards to the damages caused to Plaintiff by these constitutional violations." (*Id.* at 20-21.) Alternatively, Plaintiff asks the Court to "amend the judgment to that [sic] the Defendants have caused damages to Plaintiff by their constitutional deprivation in their ordering of the blood draw upon Plaintiff without first obtaining a warrant from a judge." (*Id.* at 21.) Then, "the Distr[i]ct Court should . . . award Plaintiff the costs of this law[]suit" and "order a new trial on the issue of compensatory and punitive damages for this blood draw issue, and any other issue(s)." (*Id.*)

## DISCUSSION

### I. Plaintiff's Renewed Motion for Judgment as a Matter of Law

#### A. Legal Standard

A party may renew its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) if the court denies the Rule 50(a) motion and the jury returns a verdict against the movant. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.* Thus, a "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

In evaluating a motion for judgment as a matter of law, a court does not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Instead, the court "must draw all reasonable

3:13-cv-01353-BEN-JMA

inferences in favor of the nonmoving party." *Id.* at 150 (citations omitted).  A court can grant a Rule 50 motion and overturn the jury's verdict only if "'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'"  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (quoting *Reeves*, 530 U.S. at 149), *aff'd*, 539 U.S. 90 (2003).  In other words, the "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

### B.  Plaintiff Is Not Entitled To Judgment As A Matter Of Law

#### 1.   Substantial Evidence Supports the Jury's Verdict that the Detention and Arrest Were Reasonable

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person.  U.S. Const. amend. IV.  A seizure of a person for a brief investigatory stop is reasonable if, under all the circumstances known to the officers at the time, the officer had reasonable suspicion that the person stopped is, is about to be, or was engaged in criminal activity and the length and scope of the stop was reasonable. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1, 19-27 (1968); Ninth Circuit Model Civil Jury Instruction 9.21.  Reasonable suspicion is based on the totality of the circumstances and is a particularized and objective basis for suspecting the particular person stopped of criminal activity.  *Cortez*, 449 U.S. at 417-18.

Moreover, the "Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (citations omitted). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37 (citations omitted).

Here, drawing all reasonable inferences in favor of Defendants, substantial

evidence supports the jury's verdict that Defendants had reasonable suspicion to stop Plaintiff and probable cause to arrest him.  The evidence demonstrated that Officers Calderson and Rodriguez saw Plaintiff emerge from a dark, wooded area, late at night, in an area known for criminal activity, specifically lewd acts and drug use.  Officer Calderson saw Plaintiff zipping up his pants as he emerged and had heard moaning of a sexual nature come from Plaintiff's direction.  Plaintiff was uncooperative, agitated, disheveled, and assumed an aggressive stance towards the Defendants.  He was sweating on a cool night, had dilated pupils, and yelled at the officers.  Considering these circumstances, Defendants decided to stop Plaintiff to question him.  Because Plaintiff had exhibited hostile behavior, Defendants placed Plaintiff in handcuffs for their safety while they investigated the incident and examined Plaintiff.

Based on these facts, there was substantial evidence to find that Defendants had a reasonable suspicion that Plaintiff was engaged in criminal activity and that the length and scope of the stop was reasonable.  The only evidence that did not support the lawfulness of the detention came from Plaintiff himself.  The jury considered all of the evidence and apparently credited Defendants over Plaintiff.  A reasonable jury could find, as the jury here found, that the detention was reasonable under the Fourth Amendment.

Upon contact with Plaintiff, Defendants conducted a field evaluation and determined, based on their training and experience, that his symptoms were consistent with someone under the influence of a controlled substance.  Among other things, Plaintiff had dilated, droopy, watery eyes; rebound dilation; slurred, rapid, mumbling, and abusive speech; fluctuating behavior; twitching fingers and legs; cold and clammy skin; and was sweating profusely on a cool night.  Considering the facts, including Plaintiff's symptoms and his presence in a known area of drug activity late at night, and drawing all reasonable inferences in Defendants' favor, substantial evidence supports the officers' belief that they had probable cause to arrest Plaintiff for being under the influence of a controlled substance.  Again, a reasonable jury could find, as the jury found in this case, that the warrantless arrest was reasonable under the Fourth

1   Amendment.

2         **2.   Substantial Evidence Supports the Jury's Verdict that the**

3                **Patdown Search Was Reasonable**

4        In general, a search of a person is unreasonable under the Fourth Amendment if the

5   search is not authorized by a search warrant.  U.S. Const. amend. IV.  However, several

6   exceptions to this rule exist.  "When an officer is justified in believing that the individual

7   whose suspicious behavior he is investigating at close range is armed and presently

8   dangerous to the officer or to others," the officer may perform a patdown search "to

9   determine whether the person is in fact carrying a weapon and to neutralize the threat of

10  physical harm."  *Terry*, 392 U.S. at 24.  The purpose of this limited search is not to

11  discover evidence of crime, but to allow the officer to pursue his investigation without

12  fear of violence.  *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).  "[A] protective

13  search—permitted without a warrant and on the basis of reasonable suspicion less than

14  probable cause—must be strictly 'limited to that which is necessary for the discovery of

15  weapons which might be used to harm the officer or others nearby.'"  *Id.* (quoting *Terry*,

16  392 U.S. at 26).

17       Here, substantial evidence supports the jury's verdict that the patdown search was

18  reasonable.  Defendants were working late at night in an area known for lewd acts and

19  drug activities.  Plaintiff appeared from the dark, wooded area, and immediately acted

20  hostile, aggressive, and uncooperative towards Defendants.  He, in fact, lunged towards

21  Officer Calderson's face.  Officer Rodriguez testified that, after handcuffing Plaintiff, he

22  patted him down and did not remove anything from his pockets.  Officer Rodriguez

23  explained that, based on his training and experience, it is still necessary to patdown a

24  handcuffed suspect because he or she is able to reach into their pockets or waistband to

25  remove weapons.  Defendants' police practices expert, Robert Fonzi, testified that it is

26  common for narcotics users to carry weapons.

27       Plaintiff contends that the patdown search was unreasonable because there is no

28  evidence that he was armed and dangerous or that he was involved in drug distribution.

(Mot. at 12; Reply at 5.)  But "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.  And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."  *Terry*, 392 U.S. at 27.  Drawing all reasonable inferences in their favor, a reasonable jury could conclude that the officers had a reasonable suspicion that Plaintiff was armed and presently dangerous to the officers, and that the scope of the search was strictly limited to a search for weapons.

### 3.   Substantial Evidence Supports the Jury's Verdict that the Blood Draw Was Reasonable

As noted above, several exceptions exist to the general rule that warrantless searches are unreasonable under the Fourth Amendment.  One of those exceptions is consent.  Under this exception, a search warrant is not required and a search is reasonable if the person knowingly and voluntarily consents to the search.  *See United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).  The Ninth Circuit "considers the following five factors in determining whether a person has freely consented to a search: (1) whether the person was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the person was told he had the right not to consent; and (5) whether the person was told that a search warrant could be obtained."  *Id.*  Because each factual situation surrounding consent is unique, other, relevant factors may also be considered.  *Liberal v. Estrada*, 632 F.3d 1064, 1082 (9th Cir. 2011).

Here, although Plaintiff was in custody, Officer Calderson read him his *Miranda* rights and there is no evidence that the officers drew their guns or displayed authority.  Nothing in the record reflects whether Plaintiff was told he had the right not to consent and that a search warrant could be obtained.  However, when Plaintiff was told his blood

would be drawn, he did not react in any way.  Despite his earlier argumentative state, he neither verbally refused the blood draw nor physically resisted it.  Therefore, Officer Calderson testified that he believed Plaintiff had consented.  Mr. Fonzi also testified that, in his opinion, Plaintiff consented to the blood draw.  The jury apparently agreed with Officer Calderson and Mr. Fonzi.  Drawing all reasonable inferences in Defendants' favor, the Court finds there is sufficient evidence for a reasonable jury to conclude that Plaintiff consented to the blood draw.

### 4.  Substantial Evidence Supports the Jury's Verdict that the Officers Are Entitled to Qualified Immunity

On the issue of qualified immunity, the jury found that a reasonable officer in the specific situation of either Officer Rodriguez or Officer Calderson would have reasonably believed at the time that his actions were lawful.  (Verdict Form, Question 9.)  Plaintiff argues that Defendants are not entitled to qualified immunity because their version of the stop and search is unreasonable.  (Mot. at 20.)  Defendants counter that the evidence and applicable law support the verdict on qualified immunity.  (Opp'n at 9-10.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A defendant "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citations omitted).

The Court finds that a reasonable officer would have believed that stopping, searching, and arresting Plaintiff was consistent with the Fourth Amendment.  As explained above, substantial evidence exists to support the jury's verdict that the officers did not violate Plaintiff's clearly established constitutional rights.  Clearly established law

supports finding that Defendants were entitled to stop Plaintiff to investigate possible criminal activity after Defendants saw him emerge from a dark, wooded area, zipping up his pants, in a place known for drug use and public sex acts; observed that he exhibited physical symptoms consistent with drug use; and testified that he acted aggressively towards them. *See, e.g.*, *Terry*, 392 U.S. at 19-27. Clearly established law establishes that Defendants were entitled to patdown Plaintiff to search for weapons so they could pursue their investigation. *Terry*, 392 U.S. at 24. Evidence demonstrated that drug users are known for carrying weapons, and Plaintiff exhibited symptoms of drug use in an area of known drug activity. Clearly established law also supports Defendants' arrest of Plaintiff based on probable cause after he was evaluated by Officer Calderson. *Michigan*, 443 U.S. at 36. Officer Calderson performed a field evaluation of Plaintiff and concluded, based on his training and experience, that Plaintiff was under the influence of a controlled substance, a violation of California Health and Safety Code section 11550.

Finally, clearly established law at the time of the incident establishes that Defendants are entitled to qualified immunity with regard to the blood draw at the police station. While substantial evidence supports a finding that Plaintiff consented to the blood draw, the exigent circumstances exception to the warrant requirement also applies. At the time of Plaintiff's blood draw in 2012, *Schmerber v. California*, 384 U.S. 757 (1996), was controlling authority from the United States Supreme Court. *Schmerber*, a drunk driving case, held that a warrantless blood draw was permissible where the police officer "reasonably . . . believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Id.* at 770 (internal quotations and citations omitted). California courts "uniformly interpreted *Schmerber* to mean that no exigency beyond the natural evanescence of intoxicants in the bloodstream . . . was needed to establish an exception to the warrant requirement," *People v. Harris*, 225 Cal. App. 4th Supp. 1, 5 (2014) (citing cases), and extended *Schmerber*'s approval of blood testing for alcohol to blood testing for the presence of drugs, *People v. Ritchie*, 130 Cal. App. 3d 455, 458-59 (1982)

3:13-cv-01353-BEN-JMA

("Making a distinction between the ingestion of alcohol and that of drugs is a needless refinement and distinction."). Thus, at the time of the incident, it was not clearly established that it was unconstitutional to draw blood without a warrant to test for the presence of controlled substances where such evidence might naturally dissipate. Subsequent to Plaintiff's arrest, in 2013, the United States Supreme Court held that the natural dissipation of alcohol in the bloodstream does not present a *per se* exigency that justifies an exception to the warrant requirement for blood testing in drunk driving cases. *Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013).

Defendants presented testimony that, at the time of the incident, it was standard police practice to obtain a blood draw from someone who had ingested drugs within the past two hours. Defendants testified that they believed Plaintiff had used drugs within the past two hours. After Plaintiff's arrest, Defendants immediately transported Plaintiff to the station for the blood draw, and they believed they did not have to obtain a warrant. Based on this record and binding appellate precedent at the time, there is substantial evidence for the Court to conclude that a reasonable officer would have reasonably believed that the blood draw did not violate Plaintiff's Fourth Amendment rights. As such, substantial evidence supports the jury's verdict that Defendants are entitled to qualified immunity.

Accordingly, Plaintiff has not satisfied his burden to show that "'there is no legally sufficient basis for a reasonable jury to find for'" Defendants. *Costa*, 299 F.3d at 859 (quoting *Reeves*, 530 U.S. at 149). Plaintiff's motion is **DENIED.**

## II.    Plaintiff Is Not Entitled To A New Trial

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," the court is bound by historically recognized grounds. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). These include verdicts against the weight of the evidence, damages

that are excessive, and trials that were not fair to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007); *see also Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) ("The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.") (citation omitted).

Although the Court may weigh the evidence and assess the credibility of witnesses when ruling on a Rule 59(a) motion, it may not grant a new trial "merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quotation marks and citation omitted); *see also Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) ("It is not the courts' place to substitute our evaluations for those of the jurors."). A court will not approve a miscarriage of justice, but "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citations omitted).

In this case, as explained above, substantial evidence exists to support the jury's verdict that Defendants' actions in detaining, searching, and arresting Plaintiff were reasonable under the Fourth Amendment. There is no evidence that the trial was unfair to Plaintiff, that the verdict was based on false or perjurious evidence or an incorrect application of the law, or that a miscarriage of justice occurred. Therefore, Plaintiff's motion is **DENIED.**

**III.   Plaintiff Is Not Entitled To An Order Amending Judgment**

Federal Rule of Civil Procedure 59(e) provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani,* 342

F.3d 934, 945 (9th Cir. 2003); *Kona Enters. v. Estate of Bishop,* 229 F.3d 877, 890-91 (9th Cir. 2000).  "Rule 59(e) amendments are appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003).  This standard is a "high hurdle." *Weeks v. Bayer,* 246 F.3d 1231, 1236 (9th Cir. 2001).

Plaintiff does not satisfy that high hurdle here.  He does not present the Court with newly discovered evidence or an intervening change in controlling law.  And, he offers no arguments why the Court committed clear error or that its decision to enter judgment in favor of Defendants pursuant to the jury verdict was manifestly unjust.  Rather, Plaintiff simply maintains his version of the events is the only reasonable version.  The jury already rejected that argument, and as explained above, substantial evidence supports the jury's verdict.  Therefore, Plaintiff's motion is **DENIED.**

## CONCLUSION

For the reasons set forth above, the Court:

(1)    **GRANTS** Plaintiff's "Ex Parte Application to File and Serve a Transcript on Monday, August 29, 2016, in support of His Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial." (ECF No. 187); and

(2)    **DENIES** Plaintiff's "Renewed Motion for Judgment as a Matter of Law, to Amend Judgment, and for a New Trial." (ECF No. 186.)

**IT IS SO ORDERED.**

Dated:  November 15, 2016

Hon. Roger T. Benitez
United States District Judge